Kimi Jean SMITH,
Petitioner–Respondent,

v.

Scott Allen SMITH,
Respondent–Appellant.

No. 16554.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 25, 1990.

Jerry E. Wells, Karen D. Wells, Joplin, for respondent-appellant.

Joseph W. Schoeberl, Joplin, for petitioner-respondent.

FLANIGAN, Chief Judge.

This action for dissolution of marriage was instituted by Kimi Jean Smith against her husband Scott Allen Smith. The parties, who will be referred to by their first names, were married on September 12, 1988, and separated January 18, 1989. This action was instituted shortly thereafter. The judgment of the trial court, in addition to dissolving the marriage, divided certain items of marital property, awarded to each party certain items as nonmarital property, and ordered Scott to pay $500 for Kimi's attorney's fees. Scott appeals.

Among the items of "nonmarital property" awarded to Kimi was an "engagement ring of the approximate value of $1,800" which Scott gave to Kimi prior to the marriage. Scott's appeal challenges those portions of the judgment which awarded the ring to Kimi and which allowed her attorney's fees.

Scott's first point is that the trial court erred in awarding the ring to Kimi because "as a matter of law where a gift is made on condition, failure to perform such condition by donee constitutes good grounds for revocation and as a matter of equity in this marriage which lasted only four months the debt of the ring should rest with the party who possesses the ring.... The extraordinary expense of this ring was incurred on the condition that the marriage be of significant duration and [Kimi] should not be allowed to enjoy the significant monetary value of a ring when the marriage was of insignificant existence."

Kimi testified that Scott gave her the ring at the time of their engagement in May 1988. The purchase price was $1,800, and Scott "charged it on his J.C. Penney charge card." Kimi testified, "I believe Scott should be responsible for that debt because it was his debt on his charge card prior to the marriage and the ring was a present to me."

Kimi also testified that the separation was caused by Scott's use of cocaine, which she had also used to a certain extent. Kimi said, "I wanted him to stop and I wanted to stop, but he just kept buying it and it wouldn't stop." Kimi was apprehensive of the effect the drug use would have upon her child by a prior marriage. She testified that Scott had lied to her with regard to his association with another woman.

Scott testified that he "gave" Kimi the ring for which he paid $1,850 by use of his J.C. Penney credit card, and that the debt was incurred prior to the marriage.

■ The essential elements of an inter vivos gift are: (1) a present intention to make a gift on the part of the donor, (2) delivery of the property by the donor to the donee, and (3) an acceptance by the donee, whose ownership takes effect immediately and absolutely. *In re Estate of Wintermann*, 492 S.W.2d 763, 767–768[3] (Mo. 1973); *Robertson v. Estate of Zimmerman*, 778 S.W.2d 805, 808[5] (Mo.App. 1989).

■ Scott does not claim that any of those elements is missing here. Citing *Jeude v. Eiben*, 338 Mo. 373, 89 S.W.2d 960 (1935), Scott argues that "gifts in contemplation of marriage [are] conditional ones." Scott says, "I would ... argue the essence of the issue is that the donor intends the condition to mean far more than the formal marriage ceremony. This gift is given on the condition that the marriage will be of lasting duration. Sixteen weeks barely qualifies as ever having existed. Equity demands in this circumstance that this expensive ring be joined with its debt and given both to one party. Upon the failure of this marriage after a mere four months, the condition failed and the donor has good cause to revoke this gift. Thus, the ring as well as the debt should be awarded to [Scott]."

*Jeude* is of no aid to Scott. In that case there was no marriage and the gift was not made in contemplation of marriage. Indeed, in *Jeude*, the gift was made before a marriage proposal was made and the proposal was rejected.

In *Lumsden v. Arbaugh*, 207 Mo.App. 561, 227 S.W. 868 (1921), cited with approval in *Jeude*, this court held that a man who had given a piano to his fiancee in contemplation of marriage was entitled to recover the piano in replevin when "she broke the engagement for no fault of plaintiff." *Lumsden* is in accord with the general rule, stated in 38 Am.Jur.2d Gifts, § 83, that "gifts made in contemplation of marriage are not absolute, but are made upon an implied condition that they are to be returned if the donee breaks the engagement ... without legal justification." See, generally, 46 A.L.R.3d 578 (Rights in respect of engagement and courtship presents when marriage does not ensue). These authorities are inapplicable here where the marriage did take place.

Courts in other states have held, in actions for dissolution of marriage, that an engagement ring given by a man to his fiancee became unconditionally the wife's separate property upon marriage and was not to be treated as marital property. *Winer v. Winer*, 241 N.J.Super. 510, 575 A.2d 518, 528[10] (A.D.1990); *Lipton v. Lipton*, 134 Misc.2d 1076, 514 N.Y.S.2d 158 (N.Y.Sup.Ct.1986). *Winer* cited with approval the following statement contained in *Lipton*, 514 N.Y.S.2d at 159–160: "The question of the conditional nature of the gift became moot upon the marriage when the ring unconditionally became the property of the plaintiff. Therefore, the ring given prior to the marriage retains its character as separate property not subject to equitable distribution."

Scott offered no evidence that the ring was given upon an express condition that the marriage would last for a certain period, nor does he cite any authority that the law will imply such a condition. Some might argue that only a rogue would so contend.

Under § 452.330.1 [1] the trial court had a duty to "set apart to each spouse his property." This court holds that the trial court acted properly in awarding the ring to Kimi and in not saddling her with any portion of the debt Scott incurred for its purchase. Scott's first point has no merit.

■ No precedential purpose would be served in discussing Scott's second point

1. All references to statutes are to RSMo 1986, V.A.M.S.

which challenges the attorney's fee award. After considering all relevant factors, including the financial resources of both parties, the trial court has broad discretion in awarding attorney's fees and its award will be overturned only upon a showing that it has abused its discretion. § 452.355; *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979); *In re Marriage of Gore*, 781 S.W.2d 828, 832[5] (Mo.App.1989). No such showing is made here. Scott's second point has no merit.

The judgment is affirmed.

PARRISH, P.J., and HOGAN, J., concur.